**JACK LOEKS ENTERPRISES, Inc.**

**v.**

**W. S. BUTTERFIELD THEATRES, Inc.,** Butterfield Michigan Theatres Co., Bijou Theatrical Enterprise Co., B & J Theatres, Inc., R. K. O. Radio Pictures, Inc., Loew's, Inc., Paramount Pictures, Inc., Twentieth Century-Fox Film Corp., Warner Bros. Pictures Distributing Corp., R. K. O. Midwest Corp., Columbia Pictures Corp., Universal Film Exchanges, Inc., United Artists Corp.

**Civ. A. No. 7839.**

United States District Court
E. D. Michigan, S. D.

Jan. 9, 1957.

See also D.C., 13 F.R.D. 5.

Seymour F. Simon and Sheldon O. Collen, Chicago, Ill., Russell C. Ashmore, Livonia, Mich., for plaintiff.

John W. Babcock, Dickinson, Wright, Davis, McKean & Cudlip, and R. William Rogers, Detroit, Mich., for defendants W. S. Butterfield Theatres, Inc., Butterfield Michigan Theatres Co., and Bijou Theatrical Enterprise Co.

Warner, Norcross & Judd, Grand Rapids, Mich., for defendant B & J Theatres, Inc.

Rockwell T. Gust and David A. Howell (of Butzel, Eaman, Long, Gust & Kennedy), Detroit, Mich., for defendants RKO Radio Pictures, Inc., Loew's, Inc., Paramount Pictures, Inc., Twentieth Century-Fox Film Corp., Warner Brothers Picture Distributing Corp., RKO Midwest Corp., Columbia Pictures Corp., Universal Film Exchanges, Inc. and United Artists Corp.

KOSCINSKI, District Judge.

In this anti-trust action plaintiff caused subpoenas duces tecum to be served on a number of persons commanding each of them to produce and have available, at the time of taking their depositions on November 19, 1956, records and documents of defendants consisting of some 28 separate categories. Defendants moved to quash the subpoenas as unreasonable and oppressive or, in the alternative, to grant them other relief under Rules 30(b), 45(b) and 45(d) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

This action was commenced on December 14, 1948. Russell C. Ashmore was then counsel of record for plaintiff. On June 25, 1951 the firm of Lucking, Van Auken, Schumann & Greiner appeared as of counsel for plaintiff; on August 24, 1955 James O. Smith and Thomas C. McConnell were substituted for counsel of record; and on November 1, 1956 another substitution of counsel was made, Seymour F. Simon and Sheldon O. Collen appearing together with Mr. Ashmore as present counsel of record for plaintiff.

After institution of the suit other defendants were joined. Besides the complaint two amended complaints were filed. Extensive discovery was had on both sides consisting of depositions, motions to produce documents and stipulations of counsel for production, as well as interrogatories. Five amended motions for production under Rule 34 were filed by plaintiff and two orders were entered directing defendants to produce documents and records for inspection and copying.

Two pre-trials scheduled by the court during 1950 and 1953 were adjourned, without date, upon stipulation of counsel, pending disposition of preliminary

proceedings instituted before dates of hearing. A third pre-trial set for January 31, 1956 was adjourned to March 27, 1956 because of absence from the country of counsel for some of the defendants and at the adjourned pre-trial hearing plaintiff was represented by attorney McConnell who informed the court that he entered the case only recently and asked for an extension of time for six months for the purpose of taking certain depositions. This request was granted and the hearing was adjourned to October 1, 1956, on which date the court was furnished an affidavit of McConnell's co-counsel, Smith, to the effect that McConnell suffered a coronary thrombosis two and a half months after his appearance in the case and because of his illness other counsel would be obtained by plaintiff to try the case. The hearing was again continued to November 1, 1956 and at this hearing plaintiff was represented by present counsel of record who informed the court that, to their knowledge, no resort was made on behalf of plaintiff for additional discovery. Counsel Simon further stated that if he had been instituting the action at this time he would take certain depositions but, being mindful of the elapse of time since suit was filed, he was willing to forego the taking of any additional depositions; he later reserved the right to take depositions if he did not succeed in securing certain admissions from defendants; he also requested production by defendants of certain documents to be marked as exhibits for the trial. The request also included documents not previously furnished, admittedly not because of any default on the part of defendants but because plaintiff, at some point, stopped with the examination of documents. Plaintiff was directed to proceed under the rules and time was extended for completion of discovery. The subpoenas now under attack were thereafter served.

Defendants contend that some 80,000 documents were submitted to plaintiff for inspection and copying, and plaintiff admits that some 44,000 documents furnished by defendants were microfilmed; defendants also acknowledge that they inspected some 22,000 documents furnished by plaintiff. According to defendants as many as 50 to 100 boxes of transfer files were placed in the Butterfield offices and plaintiff's counsel Ashmore admits that he spent the equivalent of at least 360 full days in these offices examining the records so furnished. Other defendants also claim that voluminous documents and records were transferred from offices in New York and Detroit and placed in the office of their counsel, in compliance with orders and stipulations for production; that documents were examined by plaintiff's counsel Ashmore, Schumann, and Smith and that defendants' attorney was then informed that all documents which plaintiff needed had been inspected and the documents could be returned to defendants and this was done; that many of the files had to be removed from storage in New York and Detroit and that the documents were located, assembled, and made available to plaintiff at considerable expense to defendants; and that the subpoenas duces tecum now request that the same documents be furnished.

Counsel for plaintiff, Simon, admits that approximately 90% of the documents covered by the subpoenas were intended primarily for marking as exhibits for trial and that the remaining documents constitute a new request; that he made no examination and proposes to make none of the microfilms of the documents previously submitted by defendants for inspection and copying as such procedure would be too cumbersome if not physically impossible. Counsel Ashmore informed the court that he is familiar with the material which he microfilmed and knows what the films contain. Counsel Simon also indicated that he would not be interested in taking the depositions of the witnesses under subpoena unless the docu-

ments requested were produced at the same time, as he may desire to interrogate them with reference to such documents.

At previous hearings counsel for both parties were advised by the court that when the issues are formulated documents to be introduced in evidence on a particular issue should be, in advance of trial, segregated into separate categories according to issues presented on which the documentary evidence will be offered, and that the documents will then be marked as exhibits.

Since the last pre-trial hearing plaintiff filed a statement of issues involved. Defendants offered to file a counter-statement of issues upon the completion of all discovery. At the present stage of this litigation a request for production of documents for marking as exhibits is, at least, premature. Marking of all exhibits, proposed by both sides, at the proper time, and after elimination of all extraneous documents, will result in a more orderly preparation for trial than a piece-meal marking.

The bulk of the documents covered by the subpoenas duces tecum, by plaintiff's admission, were previously produced by defendants and a great number of documents so furnished had been copied by means of the microfilms. A second production by defendant, for the purpose requested, would be no less cumbersome to defendants, in the court's view, than the selection of pertinent documents by plaintiff from those already copied and a second request to do so by means of the subpoenas duces tecum is unreasonable and oppressive. After resorting to considerable discovery plaintiff apparently now feels it previously copied too much, and by a method which it now finds impractical and cumbersome, and, by way of a request to produce documents for marking at the trial on discovery depositions, is attempting to initiate discovery proceedings all over again, although more than eight years elapsed since filing of the suit, and defendants apparently complied with all orders for discovery thus far made by the court and with all stipulations therefor entered into between counsel.

In Joseph L. Lee, Inc., v. Margon Corporation, D.C., 18 F.R.D. 390, the court granted a motion to quash subpoenas duces tecum on the ground that they were unreasonable and oppressive. The court in that case criticizes a growing tendency to combine Rules 26(b) with Rule 45(d) as a substitute for the discovery and production of documents and things for inspection, copying or photographing "upon motion of any party showing good cause therefor", allowed by Rule 34. Rule 26(b) permits a litigant to ascertain upon a deposition the existence, description, nature, custody, condition and location of any books, documents, or other tangible things. Rule 45(d) permits the party noticing a deposition to obtain from the clerk, without order of court, a subpoena to produce designated books, papers, documents, or tangible things which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by Rule 26(b). Rule 34 authorizes an order for production of documents and things for inspection, copying or photographing upon a motion of any party showing good cause therefor. The court states in its opinion that the rules did not intend to eliminate the original necessity for a court order, pursuant to Rule 45(d) (1) before its amendment in 1948, permitting the use of a subpoena duces tecum. It notes the important distinction between the subpoena duces tecum and discovery and inspection—in case of the subpoena the one *upon whom it is served* may seek relief for *unreasonableness or oppressiveness*, whereas in case of discovery and inspection *the one seeking it* must establish *good cause* therefor. The court then held that even where the one upon whom the subpoena duces tecum is served does not attack it for unreasonableness or oppressiveness but complies and produces the identified document at a deposition, that still does not give

the examiner the right to inspect or copy it without an independent order under Rule 34 upon a showing of good cause. It also holds that the assertions of the plaintiff in that case, in its answering papers to the motion to quash, tending to establish good cause for the production of the documents and its right to inspect them, are inapposite on the motion to quash its subpoena.

Other cases held that a showing of good cause must be made prior to production of documents and records sought by a subpoena duces tecum. North v. Lehigh Valley Transit Co., D.C., 10 F.R. D. 38; Continental Distilling Corp. v. Humphrey, D.C., 17 F.R.D. 237; United States v. 6.82 Acres of Land, D.C., 18 F.R.D. 195.

█ Plaintiff in this case sought to justify the need for production of documents not previously furnished by defendants. According to the precedents cited, such showing is not one which should be made or considered on a motion to quash subpoenas duces tecum.

For reasons herein stated the motions to quash subpoenas duces tecum, filed by defendants, are hereby granted.